CHARLES WICKER *et al.*

*v.*

BENJAMIN F. RAY.

*Filed at Ottawa November 13, 1886.*

1. WILLS—*whether an estate in fee, or merely for life.* Where a testator in a devise employs language sufficient to pass the fee simple title, in the absence of the expression of a clear intention to cut down the fee to a life estate, an estate in fee simple will pass.

2. The following clause in a will, "I now will and bequeath the rest and residue of all I possess of real and personal and mixed property, as follows, viz.: one-fourth to my daughter H., one-fourth to my son W., one-fourth to my two grandchildren, J. and E., and one-fourth to my wife, C.," is held sufficient to pass the fee simple title of the undivided one-fourth of the estate to the two grandchildren.

3. A subsequent clause in the will, directing that the one-fourth given to his daughter be so secured to her that she should enjoy it during her natural life, and after her decease then to her right heirs forever, and expressing a wish that the interest of the two grandchildren should in like manner be secured to them, and giving the executors power to so secure such shares, as indicated, and to manage the estate until a division thereof, etc., was held not to cut down the estate in fee given to the grandchildren in the prior clause, and make it an estate for life, only.

4. SAME—*the rule in Shelly's case—its application.* A devise of an estate to a daughter, to be so secured to her that she shall enjoy it during her natural life, and after her decease to go to her heirs forever, will, under the rule in Shelly's case, give her an estate in fee simple.

5. SAME—*when the legal title is given to executors.* A testator devised his estate in four equal parts, one-fourth to his daughter, one-fourth to his son, one-fourth to two granddaughters, and one-fourth to his widow, and by

the will further provided and directed that the share of his daughter be so secured to her that she might enjoy it during her life, and on her death to go to her heirs forever, and in like manner that the share of his granddaughters be so secured to them, and gave his executors power to manage the estate for the best interests of all concerned, until a division should be made, and to sell depreciating stocks or property, and re-invest, when deemed proper: *Held,* that the executors, by implication, took the legal title to the estate, in trust, to enable them to carry out the intentions of the testator, and discharge the trust created by the will.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

.Messrs. WILSON & MOORE, and Mr. N. M. JONES, for the appellants :

Jenny and Eliza Carson took a life estate, only, under the will of Lewis Whiteman. *Butler* v. *Huestis,* 68 Ill. 594; *Belslay* v. *Engel,* 107 id. 182; *Perrin* v. *Blake,* 4 Burr. 257.

The decree of the circuit court as to the construction of Whiteman's will does not enlarge the estate acquired by Jenny and Eliza Carson under such will, nor can it bind the remainder-men.

Messrs. HUTCHINSON & LUFF, for the appellee :

Under the devise, and by operation of law, Jenny and Eliza Carson were seized in fee simple of one-fourth of the estate. 2 Washburn on Real Prop. 554, *et seq.; Baker* v. *Scott,* 62 Ill. 86; *Brislain* v. *Wilson,* 63 id. 173; *Beacroft* v. *Strawn,* 67 id. 28.

The rule in *Shelly's case* is a rule of property, and not of construction, and in all cases within the terms of the rule the estate vests absolutely, by operation of law. 2 Washburn on Real Prop. 554, *et seq.; Baker* v. *Scott,* 62 Ill. 86.

The rule in question, as applied by the decisions of this court to the same state of facts shown in this case, and long acquiesced in and relied upon as a rule of property, will not

be disturbed, except for the strongest reasons, and for manifest error. 1 Kent's Com. 476; *Headen* v. *Rust*, 39 Ill. 186; *Anderson* v. *Jackson*, 16 Johns. 402; *Bates* v. *Relyea*, 23 Wend. 341.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The appellee, Benjamin F. Ray, on the 17th day of April, 1886, being in possession and claiming to be the owner of the land in controversy, bargained and sold the same to appellants, Charles G. Wicker and Charles H. Smyth, for $12,800, to be paid in installments. The title, upon examination, not being satisfactory to the purchasers, they declined to perform the agreement. The appellee thereupon filed, in the Superior Court of Cook county, the present bill, to compel a specific performance of the contract. Upon the hearing, the court entered a decree in conformity with the prayer of the bill, which, on appeal, was affirmed by the Appellate Court for the First District. The present appeal is from the judgment of affirmance.

Appellee deduces title to the land in question from Jenny and Eliza Carson, devisees under the last will and testament of their grandfather, Lewis Whiteman, deceased. His will, so far as it affects the present controversy, is as follows:

"I now will and bequeath the rest and residue of all I possess of real, personal and mixed property, as follows, viz.: One-fourth to my daughter, Harriet W. Irwin, one-fourth to my son, William J. Whiteman, one-fourth to my two grandchildren, Jenny and Eliza, daughters of Jenny Carson, wife of Dr. William Carson, and one-fourth to my wife, Catharine. The interest of one-fourth aforesaid, of my daughter, Harriet, I will shall be so secured to her that she shall enjoy it during her natural life, and after her decease, then to her right heirs forever; and in like manner do I wish the one-fourth interest secured to my grandchildren, Jenny and Eliza Carson. I desire to clothe my executors with power to secure to my

daughter, Harriet, the one-fourth interest in my estate as above, and also to secure to my grandchildren their interest of one-fourth. I desire to empower them to manage my estate for the best interests of all concerned, until a division is made, that they may sell depreciating stocks or property, and re-invest the same, when they deem it proper. The income, from whatever source, until a division is made, my executors will pay to each party as realized, one-fourth to each. My Illinois lands I would recommend to be held for five or ten years, and not sell then, unless the time was favorable for such sale."

The question to be determined is, whether Jenny and Eliza Carson took, under the will, a fee simple or life estate. If the former, the decree below is right; if the latter, it is wrong.

The first clause of that portion of the will cited is clearly sufficient to pass the fee to the two grandchildren. The question then arises, whether the following clause was intended as a modification of the previous unconditional limitation,— or, in other words, was it thereby intended to cut down the fee to a life estate. In considering this question, it is proper to note the character of the estate devised, and the duties and powers which the testator evidently intended should be performed and exercised by the executors with respect to it.

For the efficient performance of the duties imposed by the will, it will be perceived the executors are clothed with power, generally, "to manage the estate for the best interest of all concerned," until a division of the estate, and, specifically, "to sell depreciating stocks or *property*," which, of course, includes real as well as personal estate; also, to re-invest the proceeds when they deemed it proper. As a fee simple title in the executors was necessary to the exercise of some of the powers thus conferred, it follows, according to a familiar rule of construction, they accordingly took, by implication, the fee in the land, for the purposes of the trust created by the will. With respect to the Illinois land, it is quite clear,

from the last clause above cited, the testator contemplated a sale of it by the executors, subject to the limitation mentioned, and not by the devisees, as is supposed by appellee's counsel. Keeping in view these provisions of the will, as well as the consequences which the law annexes to them, we can the more readily understand the meaning and purpose of the testator in directing that his daughter, Harriet's, one-fourth interest "should be so secured to her that she should enjoy it during her natural life, and after her decease, then to her right heirs forever," and that the one-fourth interest of his grandchildren, Jenny and Eliza, "should be secured in like manner." The executors being thus clothed with the legal title to the entire estate, and having an unlimited power of disposition over the same, it is natural enough that the testator should have expressed his wishes, as he did, in respect to the manner in which the interests of his daughter and grandchildren should be settled upon them, or secured to them, as he expresses it, by the executors. As the equitable fee in the undivided land had already been given them by the will, it was the wish of the testator that their interests, when allotted and set apart, should be settled upon them by the executors in equally as favorable and ample a manner, and the most appropriate way of doing that was the one the testator directed to be adopted, namely, to limit the estate to them and their respective heirs. It is true, the limitation directed is not precisely in this simple form, for if it were, no question could have arisen about it; but, in legal effect, there is no difference between the language used and that contained in a limitation of the simple form stated.

The fact that the testator gave no directions in respect to securing or settling the interests of the other devisees, does not at all militate against the view we have taken. There may be, and probably were, personal considerations, applicable alone to the daughter and grandchildren, which led the testator to give special instructions, as he did, in respect to

their interests.   At all events, it is not clear that the testator, by the provision of the will in question, intended to limit or cut down the fee, which he had already given by the preceding clause, to a mere life estate, and in the absence of such clear intention, according to all the authorities, both English and American, it should not be given that effect.   Treating the clause which is supposed to so cut down the fee, as a distinct, substantive limitation, the case would then clearly come directly within the principle of law known as the rule in *Shelly's case,* and would, of course, be governed by it. 2 Washburn on Real Prop. 554, *et seq.; Baker* v. *Scott,* 62 Ill. 86 ; *Brislain* v. *Wilson,* 63 id. 173 ; *Beacroft* v. *Strawn,* 67 id. 28.

We think the decree of the court below is right, and the judgment of the Appellate Court will therefore be affirmed.

*Decree affirmed.*

SCOTT, C. J. :   I do not concur in this opinion.