# REUBEN M. PRITCHARD AND SARAH E. PRITCHARD ET AL.

## v.

# JOHN WALKER, ETC.

*Wills—Construction—Rules—Life Estate in Personal and Real Property with Power to Sell and Convey—Domestic Animals—Joint Tenancy —Survivorship—Emblements—Notes—Injunction—Practice—Assignment of Cross-Errors—Sec. 79, Practice Act—Jurisdiction.*

1.  In an action presenting distinct controversies respecting real and personal property, cross-errors can not be assigned under the statute merely to defeat the jurisdiction of this court.

2.  Where two persons hold as joint tenants with the right of survivorship, upon the death of one the whole interest passes to the survivor. But this right does not extend to growing crops nor to crops already harvested.

3.  A life estate in personal property gives the donee the right to consume such articles as can not otherwise be enjoyed, and to wear out by use such articles as can not be used without wearing out. The remainder-man can only claim the identical domestic animals that were given for life, or the increase from them.

4.  In the construction of a will the intention of the testator, if not inconsistent with the rules of law, governs, and this intention is to be ascertained from the whole will and all its parts taken together. Every clause and provision, if possible, should be given effect according to the intention of the testator.

5.  In the case presented, it is *held:* That it was the testator's intention that his widow should convert to her own use, if she deemed she had occasion so to do, the residue of the moneys in her possession, and that the remainder-men should only have such portion thereof, if any, as remained unexpended at the time of her death; that the will in question gave to the widow a life estate in a certain tract of land, with power to sell and convert the proceeds to her own use and benefit, with remainder in the land, if unsold under the power, and if sold, then remainder in such portion of the proceeds and avails as remained unexpended at her death to the sons of the testator; that the land having been conveyed the rights of the remainder-men attach to the unexpended residue of the proceeds, and to any unexpended interest and profits thereon; that the evidence sufficiently identifies the sums represented by certain notes made by the remainder-men as part of said fund so remaining unexpended; and that the remainder-men are entitled to the surrender of said notes and a mortgage securing one of them and to injunctions restraining the defendants from prosecuting suits thereon.

[Opinion filed January 22, 1887.]

APPEAL from the Circuit Court of DeKalb County; the Hon. C. W. UPTON, Judge, presiding.

Mr. HARVEY A. JONES, for appellants.

Messrs. GEO. C. CHRISTIAN, LUTHER LOWELL and DUANE J. CARNES, for appellees.

BAKER, P. J.   The bill of complaint herein was filed by Reuben M. Pritchard, Sarah E. Pritchard, widow of Ethan A. Pritchard, deceased, and Elliott and Elotia Pritchard, children of said Sarah E. and Ethan A. Pritchard, against John Walker, administrator of Elotia Pritchard, deceased, and the heirs at law of said Elotia Pritchard, deceased, and others. The objects of the bill were somewhat manifold.   One object was to enjoin the prosecution of a certain bill in chancery by said administrator against Sarah E. Elliott and Elotia Pritchard to foreclose a mortgage given by Ethan A. Pritchard, deceased, to the intestate of said administrator, to secure the payment of two promissory notes made by him to her and to have the moneys mentioned in said notes decreed to be the property of said Reuben M., Sarah E., Elliott and Elotia, under and by virtue of the limitation contained in the second clause of the will of one Reuben Pritchard, deceased, who died testate in 1856, and was the father of said Reuben M., and grandfather of said Elliott and Elotia.   Another object was to enjoin the prosecution of a suit at law by said administrator against Reuben M. Pritchard, upon certain promissory notes executed by the latter to administrator's intestate, and to have the moneys secured thereby decreed to Reuben M., Sarah E., Elliott and Elotia Pritchard, on the ground of the limitation alluded to above.

The intestate, Elotia Pritchard the elder, died October 19, 1871, possessed of chattel property, notes and bonds of the value of some $5,229.98, and another of the objects of the bill was to have the bulk of this property decreed to and vested

in said Reuben M., Sarah E., Elliott and Elotia Pritchard, under the said limitation in the will of Reuben Pritchard, deceased, and to have the residue of said chattel property decreed to and vested in the above named Sarah E. Pritchard as surviving joint tenant for life under the second clause of the will of Ethan A. Pritchard, who is spoken of above, and who died July 29, 1865. And still another object of the will was to quiet the title to a tract of land containing 154 acres, and recover an equitable freehold therein.

Upon a hearing in the Circuit Court, upon the pleadings and proofs, a decree was rendered in favor of the complainants below, appellants here, in respect to the 154 acres of land, and in favor of the defendants below, appellees here, in respect to all the other matters and things involved in the cause. Appeals were prayed by each party, respectively, and allowed. Appellees did not perfect their appeal. Appellants did appeal but only from those portions of the decree regarding matters other than the tract of land in controversy, and their assignments of error question only those parts of the decree that have reference to the personal property. Thereupon appellees assigned upon the transcript of the record in this court cross-errors, some of them upon that portion of the decree in respect to the real estate. Appellants then moved to strike out such latter cross-errors, and appellees entered a cross-motion to dismiss the appeal for the want of jurisdiction in this court to hear and determine the matters presented by the record, and the assignment of the cross-errors thereon, on the ground a freehold was involved; and these two motions were reserved by the court to the hearing.

The right to assign cross-errors is given by statute. Practice Act, Sec. 79. The statute, however, must receive a reasonable construction. We do not regard Smith v. Wright, 71 Ill. 167, and Cable v. Ellis, 86 Ill. 525, 543, as by any means decisive of the matter now under consideration. The first mentioned case only decides that if an appellee assigns a certain matter as a cross-error, and the same is decided against him, he will be concluded by the decision from prosecuting a writ of error, assigning the same matter as error; and in the

Pritchard v. Walker.

Ellis case it was held that where three suits in chancery, relating to the same property, are consolidated, and thereupon one of the complainants files an amended and supplemental bill, reciting specifically and in detail all the proceedings in the three suits, reiterating his prayer for relief as in his original bill, the latter may, on appeal by one of the other complainants, assign for cross-error any decree or refusal of decree to his prejudice. The doctrine announced in Cable v. Ellis is undoubtedly the general rule; but this before us is an exceptional case. Appellees have failed and declined to either appeal or sue out a writ of error for the purpose of reversing the decree respecting the real estate. They got all the personal property in controversy, and presumably they are content with the decree. They claim to occupy a position where, declining to either appeal to or sue out a writ of error from the Supreme Court, they can blow either hot or cold. Had appellants gone into the Supreme Court, appellees could say: " We are not objecting to the decree in regard to the real estate; that is settled by the decree below, and you assign no errors involving a freehold; and we assign no cross-errors; you should have gone to the Appellate Court." But, as the appeal was taken to this court, the converse of this position is taken, cross-errors are assigned, and it is moved to dismiss the appeal for want of jurisdiction. The statute in question is remedial in its character and was intended to cure a defect in the law and conserve the rights of appellees and defendants in error ; and it should not be so construed as that it may be used as a sword and not as a shield, and thereby occasion evils greater than those sought to be cured. It was not the legislative intention by this section to deprive one of the parties to a litigation of any opportunity whatever to have the decree against him in the trial court reviewed by a court of errors. The writ of error is a writ of right, and the same question would arise were this record now here on error instead of by appeal.

We think the rule laid down in Cheney v. Teese, 113 Ill. 444, should apply here. This is the only court to which appellants could go for the purpose of raising the only questions they could raise upon the record. If they can not remain here, they are

remediless. As a general rule, Appellate Courts will not review cases by piecemeal; but they will do so under particular circumstances of hardship, and where otherwise there would be a failure of justice. Besides this, the controversy about the 154 acres of land is a wholly different and distinct contention from those respecting the personal property, and the issues both of law and of fact involved in the two branches of the litigation are wholly unlike. This court obtained jurisdiction and rightfully, to determine the questions raised by appellants with reference to the personal property, and it can not be ousted of this rightful jurisdiction by the assignment of cross-errors.

The motion to dism'ss the appeal is overruled, and the motion to strike the cross-errors from the record so far as they seek to question the decree in regard to the 154 acres of land, is sustained.

A number of contentions arise upon that portion of the decree that is before us for examination.

The second clause of the will of Ethan A. Pritchard gave to his wife, Sarah E. Pritchard, and to his step-mother, Elotia Pritchard, during their joint lives, and to the survivor of them during her natural life, the possession, rents, use and income of his farm, containing 353 acres. A devise of the rents and profits or of the income of lands passes the land itself, both at law and in equity; and the effect of Sec. 5 of the Conveyance Act is not to forbid the creation of a joint tenancy by grant or devise, but it is merely required by that section such tenancy shall be expressly declared in the instrument, and that was done in this instance by the use of the words, "during their joint lives, and to the survivor of them during her natural life." So they held a life estate as joint tenants, with the right of survivorship; and when Elotia Pritchard died on the 19th of October, 1871, the whole interest of the joint tenants belonged to Sarah E. Pritchard, the survivor. The only serious claim made by virtue of this will upon the personal property in the hands of Walker, administrator, is to a lot of hay in stacks and in barn, quantities of oats and barley in grainery and a quantity of corn in cribs and in barn. It does not appear from the evidence, at least as ab-

stracted, in what year these products were raised. So far as concerns the hay, oats and barley, it is a matter of no moment in what year they were grown, as the court will take notice of the seasons, and that the crops specified were matured and harvested, in any event, months before the death of the administrator's intestate, and that when severed from the freehold the title to a moiety vested in her without right of survivorship in her co-tenant. In respect to the corn, the burden of proof was upon appellants to establish their owner-ship, and the evidence does not show whether it was grown that year or some prior year, or whether it was rent corn or planted and cultivated by intestate as tenant for life; the farm had been leased to the Houghs, but that lease came to an end in the fall of 1870. Besides this, the tenant for life is entitled through his lawful representatives to the profits of the annual and growing crops as emblements. The decree of the Circuit Court upon this part of the case was right, and is affirmed.

The other claims urged by appellants are based upon the provisions of the will of Reuben Pritchard. The second clause of that will was as follows:

"Second. I give, devise and bequeath to my beloved wife Elotia Pritchard, in lieu of her dower, certain lots of land being in the County of DeKalb and State of Illinois, and described as lots two ; the northeast quarter and east half lots one and two, the northwest quarter of section four in township (38), north of range (4) east, containing 168 and 20-100 acres of land according to government survey. I appoint and fully authorize my wife, Elotia Pritchard, with full power and authority to sell and convey the title to the above described lands at any time and convert the avails to her own use and benefit; and also I further bequeath during her natural life-time, one span of horses, one an iron gray and one a bright bay, and two colts, one black and one bay coming three years old, three cows and all the household furniture now by me owned, and all the farming tools that are used and by me owned on the premises that I now occupy, and other items not particularly named and disposed of in this will during her

natural life as aforesaid, and at the death of my said wife, all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended, to my two sons, Reuben M. Pritchard and Ethan A. Pritchard, and to their heirs and assigns forever."

It is plain that by the terms of this bequest Elotia Pritchard was made legatee for life of the specific live stock and chattel property mentioned therein, with remainder over to her step-sons. It was provided, however, that the sons should take as such remainder, not the whole of the property absolutely, but it or such of it as should be unexpended at the death of the life tenant. None of the chattels left by Elotia Pritchard at her decease and inventoried by her administrator are identified as being the precise or specific articles of property that she took under the will as legatee for life. A life estate in personal property gives the donee a right to consume such articles as can not be enjoyed without consuming them, and to wear out by use such articles as can not be used without wearing out. The fifty bushels of wheat and 100 bushels of oats were evidently intended by the testator for consumption on the farm, and the horses, cows, wagons, harness, farming utensils and lumber intended for use on the farm, and presumably during the fifteen years that elapsed between the death of the testator and that of the legatee for life, the articles mentioned either died or were worn out, or used and consumed for legitimate farm purposes. It makes no difference that cows, heifers steers and calves appear in the inventory made by the administrator, for they are not shown to be the domestic animals that were given for life, or the increase from them. In the inventory of the estate of Reuben Pritchard, promissory notes and money on hand, amounting in the aggregate to $850, are mentioned; but the first clause of his will directed that his funeral expenses and just debts should be paid, and we are unable to say, in the absence of proof, that there is any presumption that these notes and moneys, which were not specifically given by the will, were not used by the executors in payment of funeral expenses, debts, and costs of administration, but went to the legatee for life under the words, "and

other items not particularly named and disposed of in this will," as a residuary bequest. But, even if such were the case, we think it is manifest from a consideration of the various provisions of the will, and in the light of the surrounding circumstances, that it was the intention of the testator that his widow should convert to her own use and consume, if she deemed she had occasion so to do, the residue of moneys in her possession, whether on hand at his death or realized from the notes, and that the remainder-men should only have such portion thereof, if any, as remained unexpended at the time of her death. In our opinion the decree of the court upon this part of the case should likewise be affirmed.

The more important question in the case is with reference to the devise of the 168 acres of land. The doctrine is that a will may create a life estate with power to sell and convey the fee, and limit a remainder after the termination of the life estate. Kaufman v. Breckinridge, 117 Ill. 305, and cases there cited. In Hamlin v. United States Express Co., 107 Ill. 443, the Supreme Court laid down certain principal rules of construction as applicable to such cases as this, and cited a number of prior decisions of the court as authority therefor. These principal rules are: "The intention of the testator, if not inconsistent with the rules of law, shall govern, and this intention is to be ascertained from the whole will and all its parts taken together. Every clause and provision, if possible, should have effect given to it according to the intention of the maker. A later clause of a will when repugnant to a former provision, is to be considered as intending to modify or abrogate the former." In the Hamlin case the first clause of the will, by its express terms, gave the real estate with full power to hold, use, enjoy or dispose of it, and convey it by absolute conveyance in fee simple, and this language considered by itself would vest an estate in fee in the donee. The only words found in the will to qualify the language so used and indicate the intention of the testator was to limit and restrict such language, so that the effect would be to vest in the donee not the title in fee, but an estate for life with power to dispose of and convey the fee, and

with remainder for the benefit of specific legatees, are those that occur in the subsequent clause of the will and create the remainder by directing the limitation over in respect to all real estate not conveyed by the first donee. The decision in the Hamlin case is cited with approval in Kaufman v. Breckinridge, above. So, also, in Bergan v. Cahill, 55 Ill. 160, and Friedman v. Steiner, 107 Ill. 125, the qualification to reduce the fee that is apparently donated to an estate for life is found only in the limitation clause of the will. The primary consideration is an ascertainment of the intention of the testator, and it is wholly immaterial in what part of the will the words are found which indicate such intention. Nor do we deem it essential to the creation of a life estate, that the intention so to do should be expressed in any set form of words; and all that is required in order to show such an estate and not the fee simple title is given the donee, is that it shall clearly appear from a consideration of all the various clauses and provisions of the will, when taken and compared together, that it was the testamentary intention the donee should have a life estate.

We are of opinion the will in question gave to Elotia Pritchard a life estate in the 168 acres of land, with power to sell and convey the same in fee and convert the proceeds and avails thereof to her own use and benefit, with remainder in the land, if unsold under the power, and if sold, then remainder in such portions of the proceeds and avails as remained unexpended at time of the death of the donee, to the two sons of the testator. Both the land and the personal property are given by one and the same general clause of the will, and at its close the testator says: "During her natural life, as aforesaid, and at the death of my said wife all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended, to my two sons." It would seem the words, "all the property hereby devised or bequeathed," included both the real estate and the chattels mentioned in that clause of the will. If the testator intended by the first sentence of the clause to invest his wife with the title in fee, then the donation of the power to sell and convey was wholly inoperative and useless. So, also, was the power

to convert the avails of the land, as she would be invested with that right as the owner of the fee simple title.   One of the rules of construction in the interpretation of wills is to ' give effect, vitality and force, if possible, to each and all of its provisions.   So, also, the limitation upon the uses to which the avails of the land were to be applied, that her power should not extend to any disposition she might think fit to make of the proceeds derived from the sale, but that she should have authority only to convert the avails to her own use and benefit, is inconsistent with the idea he regarded her in the light of an owner in fee simple absolute, and is an indication it was his intention that the proceeds not consumed for her own use and benefit, but remaining "unexpended" at her death, should vest in his two sons as provided in the latter part of the clause.

In 1857 Elotia Pritchard sold a part of this land for $1,000, and on the 28th of October, 1862, sold the residue for $1,100, making $2,100 in all.

The land having been conveyed and converted into money, equity will regard the money as substituted for the land.   It is to be noted, however, that the legatee for life had authority to convert this money to her own use and benefit, and that the rights of appellants as remainder-men, attached only to the residue of the fund, if any, remaining unexpended at the death of the life tenant.   Has any of the fund been identified as so remaining "unexpended"?   On the 12th of October, 1858, Ethan A. Pritchard, now deceased, one of the remaindermen, executed to Elotia Pritchard two promissory notes of that date, one for $232, and the other for $300, making $532 in all, and secured them by a mortgage on real estate, and the suit to foreclose that mortgage was enjoined in this cause.

On the 15th of December, 1865, Reuben M. Pritchard, the other remainder-man, made to Elotia Pritchard his promissory note for $925.98, drawing 8 per cent. interest; and on the 29th of July, 1869, he made to her his note for $600, drawing ten per cent. interest.   There is no direct and positive proof of the consideration for which 'or the circumstances under

which these notes were given. The mouths of Elotia and Ethan A. Pritchard have been closed by death, and the mouth of Reuben M. Pritchard is closed by the law, and they were the only parties to these transactions. The claim of appellants is that by and through arrangements made between the legatee for life and the remainder-men the latter were permitted to anticipate their legacies upon executing interest-bearing notes, the principal sums to be repaid in case they were needed for support during the natural life of Elotia, otherwise not. The circumstances in proof tend to establish this view of the case. The principals of the two sets of notes amount to $2,057.98. and the 168 acres of land sold for $2,100, the two sums being almost the same. The notes of Ethan A. for $532 were given shortly after the first sale of land for $1,000; and the notes of Reuben M. were given after the second sale of land. It is highly improbable that in 1858 Elotia would have had over $500 to loan other than the moneys derived from the sale of land effected in 1857, for at the death of her husband, in 1856, she had no property other than that derived through his will, except the claim she held upon the tract of 154 acres of land upon which they had both lived and she continued to live, and only twenty-five acres of that was tillable, and it is not to be presumed she could have saved anything of any moment from the rents, issues and profits of that twenty-five acres in the course of two years. No other probable source from which she might have derived the $532 is suggested, for she did not get the life interest as joint tenant in the farm of 353 acres until the death of said Ethan A., in 1865. It further appears that up to the time of his decease Ethan A. paid and somewhat overpaid the interest that accrued upon his notes.

Elotia became possessed as joint tenant for life, of the farm of Ethan A., on the 29th of July, 1865, and very shortly thereafter the Reuben M. Pritchard note for $925.98 was executed to her, and that sum was within less than $175 of the amount she had received for the purchase money of the residue of the land she had held under the will of her deceased husband. It further appears from the testimony of several witnesses

Pritchard v. Walker.

that Elotia stated on divers occasions that the Reuben M. Pritchard notes belonged to him; and at one time she got hurt and was afraid she was going to die and surrendered the notes to him, but on her recovery got them back, saying at the time that she thought she would need them, but that after she got through with them she wanted them returned to him. It also appears Elotia was always on the most friendly and intimate terms with her two step-sons and with their families, and frequently expressed her intention to make a will for their benefit, but died suddenly without so doing. Upon consideration of these facts and other corroborative circumstances in proof, we are of opinion the evidence sufficiently establishes that the sum of money included in the two Ethan A. Pritchard notes and in the Reuben M. Pritchard notes, for $925.98 and $600, respectively, are parts and parcels of the fund which appellants, as remainder-men, under the will of Reuben Pritchard, are entitled to have. The note of Reuben M. to Elotia Pritchard, for $180, is also a part of the same fund, for it affirmatively appears upon its face it was given for interest accrued upon the other notes, and it must be regarded in the light of an accretion to the common fund. In the view we have taken of this will, the fund created by the devise therein and the exercise of the powers conferred, to sell the subject of the power, and then convert the avails thereof to the use and benefit of the donee of the power, with limitation over only in respect to the unexpended residue of such avails, is in effect a common fund in which both the principal sum and the interest, profits and income accruing thereon would enter as component parts, with a vested right in the legatee for life of the fund to spend therefrom at will, for her own use and benefit, with remainder at her death, in whatever of the common fund then remained unexpended, regardless whether it be principal or interest. In this respect it differs from an ordinary legacy for life with limitation over, where the legatee for life would be entitled only to the interest accrued up to the date of his death, and the remainder-man would take the principal of the fund and that only.

In our opinion the evidence does not show that the other

notes and bonds inventoried by the administrator of Elotia Pritchard, and amounting in the aggregate, without interest, to $1,741.22, are any part of the fund created under the will of Reuben Pritchard. The notes all bear date as late as or later than 1869, and they as well as the United States and Lee County bonds were probably procured with funds derived from the lands held in joint tenancy under the will of Ethan A. Pritchard.

To the extent that is indicated herein, the decree of the Circuit Court is reversed and the cause remanded, with instructions to enter a decree declaring the notes and mortgage executed by Ethan A. Pritchard to Elotia Pritchard, and the notes for $925.98, $600 and $180, respectively, executed by Reuben M. Pritchard to Elotia Pritchard, to belong to and be the property of appellants as legatees in remainder, and directing that said mortgage and all of said notes be surrendered and delivered to appellants, and also ordering that appellees be perpetually enjoined from prosecuting the suit to foreclose said mortgage, and also ordering that they be perpetually enjoined from prosecuting the suits at law so far as they seek to recover upon the five promissory notes above mentioned and specified.