JOSEPH P. FELL, as Administrator with the Will Annexed of LILLA B. McCREADY, Deceased, Appellant, Respondent, v. IRA T. McCREADY and Others, Respondents, Appellants.

LOLA LEE BUTLER and Others, Respondents, Appellants, v. BENJAMIN FRANKLIN ADAMS and Others, Appellants, Respondents.

Fourth Department, October 11, 1932.

*Slee, O'Brian, Hellings & Ulsh* [*John Lord O'Brian, Dana B. Hellings* and *Francis M. Shea* of counsel], for Joseph P. Fell, as administrator, etc.

*Moot, Sprague, Brownell, Marcy & Carr* [*Helen Z. M. Rodgers* and *Walter D. Herrick* of counsel], for Ira T. McCready and others.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* and *D. J. Kenefick, Jr.*, of counsel], for Hulda E. Miles, as administratrix, etc., and others.

*Dion T. Rahill*, for Whitney G. Case.

*Charles W. Pooley*, for Doris W. McCready and others.

*Henry W. Brush*, guardian *ad litem* for infant defendants, Sarah Wade Birk and others.

THOMPSON, J. We are charged with the difficult task of construing the will of Riley W. McCready, a late resident of Chicago, Ill., who died at Chicago on the 22d day of January, 1892.

After giving $5,000 to one of his nephews, and all his household furniture to his wife, Mr. McCready disposed of the residue of his estate as follows:

"*Fourth.* I give, devise and bequeath to my wife, Lilla B. McCready, all the rest, residue and remainder of my property and estate of every kind, nature and description of which I shall be possessed, or in which I shall have any interest, legal or equitable at the time of my death, to be held by her for and during her natural life.

" It is my will that she shall have the sole possession and the entire and absolute control and management of such residue and remainder of my estate of every kind and description, with full power and authority to invest the same or any part thereof in such manner

as to her may seem best for the preservation and increase of the same; and from time to time to change such investments and reinvest the same, or any part thereof, in interest-bearing securities or in real estate, as to her may at any time seem best; to continue my business of manufacturing corks, and to increase or diminish the amount of capital employed therein so long as she may think it best, or may desire to do so, or to at any time sell out and dispose of all interest in such business and to otherwise reinvest the proceeds.

" I hereby give her full power and authority to bargain, sell and convey any and all real estate, or legal or equitable interest therein; to purchase any other real estate, taking the title thereto in her own name, and to again re-sell and convey the same, intending hereby that she shall have full power and authority so long as she shall live, to do all, any and every act in reference to my said estate real and personal and the proceeds thereof, and every part thereof which she may think necessary or best for her own profitable use and enjoyment thereof, and which I might do if living and personally present. She is authorized to take, use and expend, both of income and of principal, whatever she may wish to do for her comfortable support — without interference or hindrance from anybody, and without liability to account to anybody for any thing she may do, having entire confidence in her prudence and discretion in the management and use of all I shall so leave.

" *Fifth.* At the death of my said wife, I devise and bequeath all the rest and residue of my estate which shall at [sic] time not have been used and expended by my said wife, to my brothers and sisters, and their issue in equal parts, the issue of a deceased brother or sister taking the share of said deceased brother or sister in equal parts between them."

This will was admitted to probate by the Probate Court of Cook county, Ill., and letters testamentary were issued to decedent's widow, Lilla B. McCready. She administered the trust thus imposed upon her, and on March 1, 1894, filed her final account and was discharged as executrix on March 30, 1894, having turned over to herself, as life tenant, the balance of the estate.

The inventory value of Mr. McCready's estate, outside of six lots located in Chicago, which were subsequently disposed of in a partition action, amounted to $93,329.97. The personal property consisted of cash, two promissory notes, and 570 shares of the capital stock of the R. W. McCready Cork Company, a corporation organized by decedent about a month before he died, for the purpose of taking over his business of manufacturing and selling corks.

Dividends on this stock, ranging from twenty-five per cent to forty-two per cent, were paid each year from the date of the incor-

poration of the company until 1902, when the Armstrong Cork Company acquired all of the outstanding capital stock. As a result of this transaction, Mrs. McCready received $52,147.20 in cash, and 962½ shares of the common stock of the Armstrong Cork Company, 960 shares of which she retained until her death, which occurred on October 28, 1926. Stock dividends, ranging from five per cent to one hundred per cent, were declared and paid out of the earnings of the company on four different occasions, so that on January 15, 1926, when the last dividend was declared, Mrs. McCready's 960 shares had increased to 4,536. Attractive cash dividends were also paid from time to time. On June 1, 1925, Mrs. McCready was given the privilege of buying her *pro rata* share of $2,250,400 par value of new common stock to be issued by the corporation. Instead of exercising such option, she sold her rights for $11,271.05.

The income from this estate proved more than sufficient to supply Mrs. McCready's every need. She not only found it unnecessary to invade the principal, but did not use all the income. The unexpended portion of the estate in her hands at the date of her death, including both corpus and income, was valued at $1,642,802.33. She died at the city of Buffalo, N. Y., while there a resident, on October 28, 1926.

The right to the accumulated and unexpended income is the bone of contention here. It is claimed by Mrs. McCready's administrator that she was given an absolute life estate in the residue of her husband's property, which gift carried with it the ownership of all income therefrom, whether expended by the life tenant or not. The remaindermen insist that this life interest was a qualified one, limited and restricted to Mrs. McCready's comfortable support; that all accumulated income not expended by her for that purpose forms a part of Mr. McCready's residuary estate, which passed under the fifth clause of his will, and that for all unaccumulated income as well as for the principal Mrs. McCready must account to the remaindermen.

As decedent was a resident of the State of Illinois at the time of his death, his will must be interpreted in accordance with the rules and principles adopted by the courts of that State. (*New York Life Ins. & Trust Co.* v. *Viele*, 161 N. Y. 11; *Dammert* v. *Osborn*, 140 id. 30.)

There is no difference between the law of Illinois and that of New York as to the fundamental principle to be applied to the construction and interpretation to be given to a will. In both jurisdictions the purpose and aim of the testator in the disposition of his property, unless inconsistent with some established rule of law

or public policy, will control. It is the duty of the court to ascertain such intention, and to give it full force and effect so far as the law of the respective sovereignty permits. This is the underlying and fundamental rule governing the construction to be given to all testamentary disposition. (*Boys* v. *Boys*, 328 Ill. 47, 50; *Welsch* v. *Belleville Sav. Bank*, 94 id. 191, 199; *Matter of Rooker*, 248 N. Y. 361, 364; *Central Trust Co.* v. *Egleston*, 185 id. 23, 28.)

While the will must speak for itself, and the intention of the author must be gathered from the instrument, the court, in order to understand better and interpret the language of the testator, should, so far as possible, place itself in his position at the time he executed the will, and take into consideration all the surrounding facts and circumstances, including his family relations, the state of his property, the purpose of the instrument, and the motives which might reasonably be supposed to have influenced him in the disposition of his property. (*Walker* v. *Walker*, 283 Ill. 11, 18; *Wardner* v. *Baptist Memorial Board*, 232 id. 606, 611; *March* v. *March*, 186 N. Y. 99, 103; *Lytle* v. *Beveridge*, 58 id. 592, 598.)

The purpose and object of the testator must be gathered from the four corners of the will, and not from some isolated or detached sentence, or some particular expression. The entire instrument must be read as a whole, and the different provisions reconciled and harmonized, if possible. (*Spatz* v. *Paulus*, 285 Ill. 82, 93; *Rickner* v. *Kessler*, 138 id. 636, 641; *Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339, 344; *Thomson* v. *Hill*, 87 Hun, 111, 115; affd., 155 N. Y. 677.)

Various technical rules, the outgrowth of the experience of the past, have been adopted by the courts for the construction of a document of testamentary character, and these rules so far as recognized in Illinois at the time of testator's death must be taken into consideration. They will not, however, be permitted to defeat the expressed intention of the testator. (*Mather* v. *Mather*, 103 Ill. 607, 612; *Farmers' Loan & Trust Co.* v. *Callan*, 246 N. Y. 481, 487.)

In our view the maker of this will intended to give his widow an absolute and unrestricted life estate in the residue of his property. There can be no doubt that the first paragraph of the fourth clause of the will read by itself created an absolute life estate. (*Boys* v. *Boys*, 328 Ill. 47; *Skinner* v. *McDowell*, 169 id. 365.) This paragraph is the disposing provision of the entire fourth clause. The clause as a whole relates to the control and disposition of his property during the life of his wife. All parties to this litigation seem to agree that Mrs. McCready by this first paragraph of the fourth clause received a life estate, the administrator of Mrs. McCready

contending that it was beneficial, absolute and unqualified, the remaindermen that it was either a qualified and conditional — or in trust for the benefit of herself and others.

When an estate is given in one part of a will in clear and decisive terms, it is an established interpretive rule that the estate will not be taken away or cut down by raising a doubt as to the meaning or application of a subsequent clause, but only by positive provision in words as clear and decisive as those giving the estate. (*Holmes* v. *Miner*, 247 Ill. 586; *Spatz* v. *Paulus*, 285 id. 82.) "Whenever the will begins with an absolute gift, in order to cut it down, the latter part of the will must show as clear an intention in that direction as the prior part does to make it." (*Goodwin* v. *Coddington*, 154 N. Y. 283, 286.) The remaindermen contend and the learned referee has found that the provisions of clause fourth, which follow the first paragraph, modify and cut down the life estate created in the first paragraph so that the widow's beneficial interest is limited to a use of the property for her "comfortable support." To us these provisions seem rather to have been designed to explain, liberalize and enlarge the life estate. An intention to secure to her a complete and unassailable possession and control of his property while she should live is manifest in every sentence. "It is my will that she shall have the sole possession and the entire and absolute control and management, * * * with full power and authority to invest the same * * * in such manner as to her may seem best for the preservation and increase of the same; * * * to change such investments and re-invest the same * * * in interest-bearing securities or in real estate; * * * to continue my business; * * * to increase or diminish the amount of capital employed therein so long as she may think it best, or may desire to do so, or to at any time sell out and dispose of all interest in such business and to otherwise reinvest the proceeds." So speaks the testator, and in expressing his obvious design to make the estate the sole property of his widow so long as she should live, he continues: "I hereby give her full power and authority to bargain, sell and convey any and all real estate, or legal or equitable interest therein; to purchase any other real estate, taking the title thereto in her own name, and to again re-sell and convey the same, intending hereby that she shall have full power and authority so long as she shall live, to do all, any and every act in reference to my said estate real and personal and the proceeds thereof, and every part thereof which she may think necessary or best *for her own profitable use and enjoyment thereof.*" Then follows another significant clause: "She is authorized to take, use and expend, *both of income and of principal,* whatever she may wish

to do for her comfortable support — without interference or hindrance from anybody, and without liability to account to anybody for any thing she may do, having entire confidence in her prudence and discretion in the management and use of all I shall so leave." By these words the testator gave the widow authority to invade the principal if the income proved insufficient for such support. In exercising the power she was not to be interfered with or hindered by anybody, and she was accountable to no one. It is an enlargement of the life estate. To hold this restrictive would, we believe, pervert the solicitous and benevolent intent which illumines the entire clause. It was, to be sure, not necessary to express an authority to expend the income for support or for profitable use and enjoyment. Such authority was implicit in the life estate. Nevertheless it was not an extraordinary thing for a devoted husband to do. We are convinced that the testator had no intention to restrict his widow's profitable use and enjoyment of her life estate. If he had he would not have left the restriction to implication. Such a restriction could be easily and clearly expressed. We think the contrary is patent throughout the paragraph. But even were such an intention not affirmatively expressed, the clause absolutely fails to make out a plain, definite and certain intention to cut down the life estate given in the first paragraph of this clause.

We find nothing in the will which indicates an intention on the part of the testator that the income of the estate should be accumulated for adult remaindermen. It is true that at the time of Mr. McCready's death such an accumulation was not forbidden by the Illinois laws. Such a law was first enacted in 1907 (*Smith* v. *Thomas*, 317 Ill. 150). Still it is unbelievable that testator intended his wife to take over his property, and to control, manage and increase it for the benefit of his collaterals, she to have only her comfortable support from it, with all else to be added to the corpus and kept for his relatives. We do not think that he meant to ordain that his surviving widow should spend her remaining years working for the innumerable hosts of his collaterals, for her keep. There has apparently been a disinclination in the Illinois courts to find directions in wills for accumulations in the absence of clearly expressed provisions therefor. (*Craw* v. *Craw*, 210 Ill. 246; *Ellis* v. *Flannigan*, 279 id. 93.)

The terms of clause fifth of the will lend support to the views that we have above stated. It will be noted that in defining his estate the testator used substantially the same language in the fifth clause that he did in the fourth. In such case the words should be given the same value and meaning in both places. (*Baker* v. *Baker*, 152 Ill. App. 620; 1 Jessup-Redf. Law & Practice

Surr. Ct. 896.) In the fifth clause, for the purposes of final disposition of his residuary estate after his wife's death, he added the words, "which shall * * * not have been used and expended by my said wife." By this provision we think he intended to dispose of so much of the principal of his estate as remained after the wife had spent such part of it as he had clearly authorized her to expend in the fourth clause.

We have already called attention to the fact that there are no words providing directly for an accumulation. It is also true that there are no words directly providing for a trust. To imply a trust (which, of course, may sometimes be done where requisite to the carrying out of a testator's manifest intention) would subject the trustee to the supervision and control of a court with chancery jurisdiction and would impose on the widow duties of accounting. Such supervision and control, with accounting, is wholly inconsistent with the powers given the widow. We reject a theory involving such inconsistencies.

There is difficulty, too, under the Illinois authorities to which we are cited in recognizing a qualified or conditional life estate. These authorities seem to hold that a legal fee or life estate cannot be limited by a condition or a restraint on alienation, that such a limitation or restraint is repugnant to the legal estate and, therefore, must be rejected as invalid. (*Wilson* v. *Turner*, 164 Ill. 398; *Henderson* v. *Harness*, 176 id. 302.)

When the whole will is examined and read in the light of surrounding circumstances (others than those above stated are mentioned in the dissenting opinion), and with reference to the pertinent Illinois law, we reach the conclusion, as already stated, that the entire income belonged under this will to the widow and that the rights of the remaindermen are limited to the principal of the residuary estate.

We are next called upon to determine whether certain property possessed by Mrs. McCready at her death is to be considered corpus or income. The question relates to the stock dividends issued by the Armstrong Cork Company and to the proceeds derived from the sale of the right to purchase additional stock in that corporation. These dividends and the proceeds derived from the sale of these rights are claimed to be income by Mrs. McCready's estate, and to be corpus by the remaindermen.

This additional stock issued as a dividend was nothing more than a transfer of the accumulated surplus to the capital account of the corporation. It took nothing from the assets of the company, and added nothing to the property of the shareholders. The proportionate interest of each stockholder in the assets of the corporation remained the same. There is nothing to show when the income

which went into the surplus out of which this additional stock was issued was actually earned.

There is a wide difference of opinion in the various States as to whether stock dividends should be regarded as income, to which a life tenant is entitled, or as capital to be held in trust for the remaindermen. There are three well-defined rules upon this subject, which are commonly known as the American or Pennsylvania rule, the Massachusetts rule, and the English rule. These rules are essentially different and lead to contrary conclusions. The Massachusetts rule prevails in Illinois, and we are, therefore, not concerned here with the others. Under the Massachusetts rule, cash dividends, of whatever size, are regarded as income, and stock dividends, whenever earned and however declared, are considered corpus. (2 Cook Corp. [8th ed.] §§ 553, 555; *Billings* v. *Warren*, 216 Ill. 281, 287.)

The referee correctly held that these stock dividends and the right to subscribe for additional stock constitute a part of the corpus of Mr. McCready's residuary estate, and go to the remaindermen.

There is also involved in this appeal a further controversy between the various parties defendant as to who constitute the remaindermen mentioned in the fifth clause of this will. In this dispute Mrs. McCready's estate has no interest. It will be remembered that by this clause the testator, at the death of his wife, gave the unexpended residue of his estate to his brothers and sisters, and their issue, in equal parts, the issue of a deceased brother or sister taking the share of said deceased brother or sister in equal parts between them. Mrs. McCready outlived her husband thirty-four years, during which time many changes occurred in the families of his brothers and sisters by death and birth. Mr. McCready was the youngest of a family of twelve children. Two brothers and one sister predeceased him, two of whom left descendants. At the death of his wife the descendants of Mr. McCready's brothers and sisters numbered 265, all of whom have been made parties to these actions. Among this number are 142 infants, all of whom were born after Mr. McCready's death, and all of whom have an ancestor living. These infants claim a right to share in this estate upon the theory that the gift mentioned in the fifth clause of the will did not vest until Mrs. McCready's death in 1926, at which time the share of each brother or sister of the testator vested *per capita* in his or her descendants of whatever degree, including those having a living ancestor. The defendants Charles Bruce Miles, George T. Miles and John S. Miles make a similar claim in effect, although somewhat different in form. The referee has found that decedent's residuary estate, subject to the rights bequeathed to his

wife, vested at the date of his death in his then living brothers and sisters, and in the issue of his two deceased brothers, *per stirpes*, but that the right to the possession of said estate was suspended until the death of the life tenant. This ruling we think was correct.

In the absence of a clear intent to the contrary, an estate will be construed as vested rather than contingent. The law frowns upon a contingent estate. (*Wallace* v. *Foxwell*, 250 Ill. 616; *Ducker* v. *Burnham*, 146 id. 9; *Carr* v. *Smith*, 25 App. Div. 214; affd., 161 N. Y. 636.)

There is, however, no rule applicable to such a case as this against the postponement of possession. (*Armstrong* v. *Barber*, 239 Ill. 389, 397; *Bushnell* v. *Carpenter*, 92 N. Y..270.)

The infants insist that the disposing clause of the will, read in its ordinary and grammatical sense, is clear and free from doubt, and shows the design of the testator to postpone the vesting of the remainder until the death of the life tenant. They claim that by all rules of grammatical construction the opening provision of the paragraph, " at the death of my said wife," modifies the words, " I devise and bequeath," which follow, and fixes the time when the gift takes effect, putting it in the future rather than in the present. There are numerous authorities which hold that, in the absence of a contrary intent clearly expressed in the will, the words " then," " on," " when," " after," " from and after," and similar expressions used in a devise of a remainder following a life estate, are to be construed as relating merely to the time of enjoyment of the estate, and not to the date of its vesting. (*Connelly* v. *O'Brien*, 166 N. Y. 406, 408; *Trowbridge* v. *Coss*, 126 App. Div. 679; affd., 195 N. Y. 596.)

It was pointed out by this court in *Wadsworth* v. *Murray* (29 App. Div. 191, 199; affd., 161 N. Y. 274) that the tendency of the courts, not only in England but in this country, is to hold that the remainder vests in the heirs in existence at the time of the death of the testator. Many authorities supporting that doctrine are there cited.

It is, however, unnecessary to discuss in greater detail when or how this residuary estate vested in the remaindermen, as that question is a closed book. It has been decided adversely to the infants and to the defendants who here contend that the remainder was contingent, in an action brought in the State of Illinois to partition the real property in Illinois left by Mr. McCready. All these infants and defendants were parties to that action. The infants were represented by their guardian *ad litem*. These precise questions were raised, and decided adversely to the contention of these particular appellants. It was there adjudicated that the real property of Mr. McCready situate in Illinois vested at the date of his death in his then living brothers and sisters, and the then living issue of his then deceased brothers, *per stirpes*. No appeal was taken.

The Superior Court, in which that action was brought, is a court of general jurisdiction, and had the power to construe the will, under which the title to the property in question passed, as an incident to the partition. (*McCreery* v. *Burmood*, 332 Ill. 645.) Having exercised that jurisdiction, the Federal Constitution (Art. 4, § 1) requires us to give full faith and credit to the judgment of that court. The same Illinois law was applicable to the devolution under the will of real estate in Illinois and of personal property. The decree is, therefore, *res adjudicata* as to the time and manner of the vesting of the residuary estate of decedent, and whether it was subject to being divested.

Subsidiary to the questions so far discussed are a number of others of less importance (involving, however, large sums) which may be decided more summarily.

The allowance to the counsel for the plaintiff Butler and other remaindermen cannot be imposed upon the income. Nothing done by these counsel has in any way inured to the advantage of Mrs. McCready's estate, to which we have determined all income belongs. These services, undoubtedly of very great value, have been performed for the benefit of their clients and they must seek compensation from them. (*Savage* v. *Sherman*, 87 N. Y. 277; *Matter of Attorney-General* v. *North American Life Ins. Co.*, 91 id. 57; *Davies* v. *Davies*, 129 App. Div. 379; affd., 197 N. Y. 598.)

As all income by our decision belongs to the estate of Mrs. McCready and is at present in the hands of her administrator or at least chargeable to him, we are not called upon to examine or pass upon his expenditures and outlays from this income. Only those interested in Mrs. McCready's estate have a right to require an accounting of the property belonging to that estate. The parties to these actions other than Whitney G. Case are not interested in that estate, and Whitney G. Case is not here questioning the acts of the administrator. These matters will properly come up upon the accounting of the administrator in the settlement of Mrs. McCready's estate in the Surrogate's Court.

While the guardian *ad litem* of the infant defendants has ably and conscientiously discharged his duty and has spent a large amount of time in supporting the interests of his wards, his efforts have been unavailing to secure any part of this estate for them. Under all the circumstances, his allowance should be fixed at $15,000 in all (together with his disbursements), and this allowance as well as the referee's compensation should be divided *pro rata* between the corpus and the income and paid by the administrator of Mrs. McCready's estate before turning over the corpus to the remaindermen.

We agree with the learned referee that the Butler action was commenced prior to the Fell action. The summons in the Fell action was served by publication, and the service was not complete until the forty-second day after the day of the first publication. (Rules Civ. Prac. rules 50 and 51.) The action was not commenced until the service was complete. (Civ. Prac. Act, § 218; *Winter* v. *Winter*, 256 N. Y. 113.) The Butler action was commenced by the service of the summons personally within the State before the service of the summons by publication in the Fell action was complete. Under these circumstances the Butler action was the prior action. (*Littlejohn* v. *Bulles*, 136 Iowa, 150.) Both actions related to the same matter. In the Fell case the plaintiff sought to render a voluntary account. In the Butler action the plaintiff sought to compel Fell to render an account. The Fell action must, therefore, be dismissed because of a prior action pending between the same parties for the same cause, in accordance with the demand for judgment in the answer in the Fell action. (*Gentilala* v. *Fay Taxicabs, Inc.*, 243 N. Y. 397.) The dismissal of the Fell action is, however, of little importance. Both actions were tried together and the appeals from both judgments were heard together. The dismissal of the complaint in the Fell case should, therefore, be without prejudice and without costs.

Finally, under our determination in the Butler action, no party has been sustained as to all his contentions, or for that matter, been defeated in all, except those parties who claimed that the remainders were contingent and the parties making such claim have been wholly defeated. In view of the general result, no costs should be granted to any party against any other party in the Butler case.

The judgment in the action of Fell v. McCready should be reversed on the law, without costs, and the complaint dismissed but not on the merits, without costs.

The judgment in the action of Butler v. Fell should be modified on the law and the facts in accordance with this opinion, without costs, and as modified affirmed without costs. Findings of fact and conclusions of law in conflict with this opinion should be disapproved and reversed and new findings and conclusions made in accordance herewith. Settle findings, conclusions and order before THOMPSON, J., on two days' notice.

All concur, except EDGCOMB and CROSBY, JJ., who dissent in part in an opinion by EDGCOMB, J.

EDGCOMB, J. (dissenting). I am unable to agree with the majority of my associates in the construction which is about to be given to Mr. McCready's will.

I quite agree with the statement of the rules which should govern us in the interpretation of this will, as stated in the majority opinion. It is very true that the underlying and controlling rule to be applied to our task is to ascertain and follow the intent of the testator. That intent, to my mind, is clear and apparent. It was not to give Mrs. McCready an absolute and unqualified life estate in the residue of decedent's estate, but rather to restrict her right to the income, as well as to the principal, to her comfortable support.

The fourth clause of the will is long, and quite unusual. In the first sentence — the one relied upon by Mrs. McCready's estate as creating an unconditional and unlimited life estate — decedent gives the residue of his property to his wife " to be held by her for and during her natural life." There is an absence of the usual expression, " to *have* and to hold." The life tenant is simply to hold the estate. So far, nothing is said as to what she should do with it. There is no provision in this clause permitting her to use any part of the estate, nor is there any direct gift of income or principal. We need not discuss or decide whether a life estate would be inferred as a matter of necessity, if the will had stopped here, because this clause is supplemented and explained by the various provisions which follow. Mrs. McCready is given the unrestricted management and control of decedent's property, and the right to invest and reinvest the same as she deemed proper, including the power to continue his business, or to sell and dispose of it. She may sell decedent's real estate, and invest the proceeds in other real property, and take title in her own name. There is nothing in the language creating these powers which indicates that the testator intended that his wife might use any part of the income or principal of the estate for her own purposes.

Mrs. McCready was given the power to change the form of decedent's estate, if she deemed it best so to do for its " preservation and increase." The possibility or likelihood of the growth of this estate was doubtless uppermost in testator's mind. His business was a most profitable one, and was paying large returns. Increase and expansion come more often from the addition and augmentation of income than from the rise in value of the original corpus, and it is not unreasonable to infer that the testator contemplated that the size of his estate could properly and easily be enlarged by the addition to the corpus of unexpended earnings. If a change was to be made, the new investments were to be " interest-bearing securities " or real estate, indicating that the testator had in mind the possibility that his wife might so invest his property that a

portion of the income might be used to augment and enlarge the size of his estate.

These provisions make Mrs. McCready the donee of trust powers of rather unusual magnitude. True, there is no express trust set forth in this paragraph of the will, but there is an implied one. Mrs. McCready is to "hold" this residuary estate for the benefit of herself and the remaindermen, her beneficial interest being restricted to her right to use such portion of the income and principal as was necessary for her comfortable support.

After conferring all these powers upon Mrs. McCready, we find the clause which causes the trouble here, and which contains the first beneficial gift to her: "She is authorized to take, use and expend, both of income and of principal, whatever she may wish to do for her comfortable support." Giving effect, as we must, to each word and expression in this provision (*Tea* v. *Millen*, 257 Ill. 624, 628; *Gahan* v. *Golden*, 330 id. 624, 631, 632; *Taubenhan* v. *Dunz*, 125 id. 524, 529; *Welsch* v. *Belleville Sav. Bank*, 94 id. 191, 200), the intention of the testator is apparent. He makes no distinction between principal and income; he treats both alike and puts both into a common fund, which he places at the disposal of his wife, and authorizes her to use so much thereof as is necessary for her comfortable support. She was the judge of the amount to be used. I find no words indicating any intent on the part of the testator to give her any more. We cannot ignore the words "both of" as used in this sentence; these words must be given proper weight and meaning. They refer to and qualify the word "income" as well as the word "principal." It must be presumed that every word qualifying another word was intended by the testator to have some meaning, and the ordinary signification of such word must be given to it unless otherwise required by the context. (*Tea* v. *Millen*, 257 Ill. 624, 628; *Gahan* v. *Golden*, 330 id. 624, 631, 632.) If Mrs. McCready had a right to the entire income, the provision that she might use so much thereof as might be necessary for her comfortable support would be both superfluous and misleading. It was not inserted as ballast; it was put there for some purpose. It cannot willfully be disregarded.

This construction which I have adopted does violence to no provision of the will, but gives proper weight and respect to each clause and word used in the instrument, and harmonizes and reconciles the entire document. This is as it should be. (*Taubenhan* v. *Dunz*, 125 Ill. 524, 529; *Hamlin* v. *United States Express Co.*, 107 id. 443; *Welsch* v. *Belleville Sav. Bank*, 94 id. 191, 200; *Rickner* v. *Kessler*, 138 id. 636, 641; *Lynch* v. *Pendergast*, 67 Barb. 501, 506.)

The conclusion already reached becomes fixed rather than dis-

turbed by the provisions of the fifth clause of the will — the gift over to the remaindermen, which was to take effect in possession and enjoyment upon the death of Mrs. McCready. Testator had given his wife the right to spend all his estate, if that was required for her support and maintenance, but he was impressed with the thought that it might be unnecessary to touch the principal, or to use all of the income, and he evidently intended that anything which was left at his wife's death, whether it was corpus or income, should go to his own blood relatives. Taking into consideration the prior provisions for the increase of his estate, there would seem to be little doubt that, when the testator bequeathed to his own relatives all of his estate which had not " been used and expended " by his wife at her death, this bequest included not only the corpus but the unexpended income.

The estate referred to and bequeathed in the fifth clause of the will is a far different one from that mentioned in the first sentence of the previous section. The principle of construction, urged by Mrs. McCready's estate, that when the same word or expression is used in different parts of the will relating to the same subject-matter, the recurring word or phrase should be given the same meaning as when first used, unless a contrary intention is apparent (*Kirkpatrick* v. *Kirkpatrick*, 197 Ill. 144; *Madison* v. *Larmon*, 170 id. 65; *Baker* v. *Baker*, 152 Ill. App. 620; *Carr* v. *Smith*, 25 App. Div. 214; affd., 161 N. Y. 636), has no application here. The two expressions are not identical. In the fourth paragraph the phrase used is " all the rest, residue and remainder of my property and estate of every kind, nature and description;" in the next paragraph the testator used the expression " all the rest and residue of my estate," and then adds, " which shall at [the] time not have been used and expended by my said wife." There is no expression in the fifth paragraph of this will which indicates any intention on the part of the testator to refer back to the same estate which he had mentioned in the preceding paragraph. In fact, it is quite apparent that decedent had no such purpose. When he alluded to his property and estate in the fourth paragraph, he referred to it as it existed at the date of his death. Concededly at that time it was all corpus; there was no income. He had every reason to believe that it would be many years before his remaindermen would be able to take possession of his residuary estate, and at that time his property would be in an entirely different condition than it was at the outset. He anticipated an enlarged estate, either by accretions in the shape of unexpended income, or an increase in the value of the corpus, or both, and he expressly provided that everything which had not been used and expended by his wife should go to his

relatives at her death. When he made his bequest to the remainder-men, he referred to an entirely different estate than he did in his bequest to his wife.

Placing ourselves in Mr. McCready's arm chair, as we are told in *Boyes* v. *Cook* (L. R. [1880] 14 Ch. Div. 53), is the proper attitude, it is not difficult to visualize the situation which confronted him back in 1890 when he made this will.

His only child had just died. He was in failing health, and undoubtedly knew that his end was near. His wife was a comparatively young woman. Their married life had been happy and harmonious. They had worked together and, by strict economy, had managed to save a comfortable sum. In the natural course of events, Mrs. McCready would survive her husband by many years. Her remarriage was by no means an impossibility. She was the first object of his bounty, and his desire was to take care of her in such a manner that she would never want for the comforts of life. To that end he dedicated his estate. He gave it to her to hold and manage as she thought best. His was a paying business: it was returning large profits. His income at the date of his death was around $20,000 a year; much more than he and his wife had ever spent in any year during their married life. They had always been frugal and saving. Decedent had every reason to anticipate that his wife would not require all of this income, if it kept up, and if the purchasing power of the dollar did not decrease. But he knew that business ventures were always fraught with uncertainty, and that no one could be sure of what the future held in store. And so he provided that, if his wife's comfort demanded the expenditure of all the income, she could use it. If it dwindled and proved insufficient to take care of her every want, he wanted her to have the right to use such part of the principal as might be necessary to free her from anxiety. If for any reason her comfort required her to use all of the principal, he placed it at her disposal; if a portion would suffice, that would be the limit of her invasion. Accordingly, the testator set aside his entire estate, both principal and income, and put it all into a single fund or unit for the use of his wife, and gave her authority to take so much thereof as might be necessary for her comfortable support, and if any was left when she was through with it, whether it was originally principal or interest, he decreed that it should go to his family, with whom he was on friendly terms, and who, rather than some stranger, would naturally be the object of his bounty. His wife's family were well to do, and needed no financial assistance from her or from the testator.

At the date of Mr. McCready's death there was no law in

Illinois prohibiting the accumulation of income. The so-called Thelusson Act, restricting such accumulations in Illinois, did not take effect until July 1, 1907, and was not retroactive. (*Smith* v. *Thomas*, 317 Ill. 150, 157.)

This construction of the will which I have suggested follows the well-established rule that, of two doubtful interpretations, the one following the blood of the testator rather than strangers will be adopted. (*Matter of Rooker*, 248 N. Y. 361, 364; *Quinn* v. *Hardenbrook*, 54 id. 83, 86.) This canon will prevail in the absence of clear and unequivocal language to the contrary. (*Matter of Werlich*, 230 N. Y. 516, 520; *Wood* v. *Mitcham*, 92 id. 375, 379.)

The claim that Mrs. McCready was entitled to the entire income from her husband's estate, whether it was necessary for her support or not, is based upon the assertion that the first sentence of the fourth paragraph of the will gives her an absolute life estate,which carries with it the unconditional ownership of all income, and that this gift is not cut down by any subsequent language in the instrument. The well-settled rule of construction is invoked that, where a clear gift is manifest from the language of the will, such bequest will not be lessened or diminished by a subsequent provision which is ambiguous or inferential, or which is not equally as distinct as the first. (*Wicker* v. *Ray*, 118 Ill. 472, 477; *Thomson* v. *Hill*, 87 Hun, 111, 116; affd., 155 N. Y. 677; *Banzer* v. *Banzer*, 156 id. 429, 435; *Goodwin* v. *Coddington*, 154 id. 283, 286; *Benson* v. *Corbin*, 145 id. 351, 359.)

This canon of construction is inapplicable here. The gift of a life estate is not especially clear, and the part which follows is neither ambiguous nor obscure. The testator's intent stands out in bold relief. In the same paragraph with the sentence which has been picked out as the decisive provision of the will are modifying and qualifying conditions. The entire clause must be read together. Testator was not through with his gift to his wife until the very end of this clause of the will.

The Supreme Court of Illinois has recently held that where an absolute gift of property in fee simple has been expressly devised by one clause of the will, and the instrument, read as a whole, shows an intention on the part of the testator that the gift should be otherwise than absolute and less than in fee simple, such purpose will govern and control, no matter in what part of the will such intention is disclosed. (*Knight* v. *Gregory*, 333 Ill. 643; *Liesman* v. *Liesman*, 331 id. 287.)

In the very nature of things, two wills are seldom phrased in the same language. Consequently precedents have but little value as an aid in the interpretation of any will. A change of a word or

an expression oftentimes alters the entire meaning of the instrument. (*Ward* v. *Caverly*, 276 Ill. 416, 419; *Robinson* v. *Martin*, 200 N. Y. 159, 164.)

The remaindermen cite as " strictly in point " the following cases, in which the will under consideration is somewhat similar in expression to that of Mr. McCready's. While these authorities are not controlling, they indicate the trend of the decisions: *Pritchard* v. *Walker* (22 Ill. App. 286; affd. in *Walker* v. *Pritchard*, 121 Ill. 221); *Thomas* v. *Pardee* (12 Hun, 151); *Kimball* v. *Bible Society* (65 N. H. 139); *Matter of Nieman* (229 Penn. St. 41); *Matter of Watson* (241 id. 271); *Bramell* v. *Cole* (136 Mo. 201); *Matter of Mallary* (127 Mich. 119); *Esman* v. *Esman* (18 Ohio C. C. 603); *Minot* v. *Tappan* (127 Mass. 333); *Wynne* v. *Walthall* (37 Ala. 37); *Cole* v. *Littlefield* (35 Me. 439); *Wentworth* v. *Fernald* (92 id. 282); *Perry* v. *Brown* (34 R. I. 203).

I have reached the conclusion that the construction which was placed upon this will by the referee and the court below was correct, and should not be disturbed.

If the views expressed in this opinion were to prevail, it would be necessary to give attention to certain items in the account, but in view of the decision about to be made such discussion would be academic and of no practical value.

As to all other questions discussed in the opinion of my brother THOMPSON, I am in accord.

I think that the judgment in the Butler action should be affirmed.

CROSBY, J., concurs.

In Fell v. McCready: Judgment reversed on the law, without costs of this appeal to any party, and complaint dismissed, but not on the merits, without costs.

In Butler v. Adams: Judgment modified on the law and facts in accordance with the opinion, and as modified affirmed, without costs of this appeal to any party. Findings of fact and conclusions of law in conflict with the opinion, disapproved and reversed, and new findings and conclusions made in accordance with the opinion. Settle findings, conclusions and order before THOMPSON, J., on two days' notice.